```
              UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


KRISTIN L. GOWIN,              :   CIVIL NO. 4:07-CV-1528
                               :
          Plaintiff            :   (Judge McClure)
                               :
     v.                        :   (Magistrate Judge Smyser)
                               :
MICHAEL J. ASTRUE,             :
Commissioner of                :
Social Security,               :
                               :
          Defendant            :
```

**REPORT AND RECOMMENDATION**


The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for Social Security disability insurance benefits.


On April 29, 2005, the plaintiff, Kristin L. Gowin, applied for disability insurance benefits. She claimed that she became disabled on April 1, 2005, as the result of adolescent adjustment reaction, depression, dysthymia,

trichotilomania, obesity and low Global Assessment of Functioning scores.

The claim was denied initially and on reconsideration. The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge (ALJ) on September 19, 2006.  (Tr. 149-171).

At this hearing the plaintiff and a vocational witness testified.  The plaintiff testified that she is twenty years old.[1]  She completed the eighth grade in school.  She is five feet four inches tall and weighs one hundred ninety pounds. She did not obtain a GED.  She has no vocational training.  She is able to read, write, add, subtract, multiply and divide. She last worked in 2003, as a cashier at a Wendy's restaurant. She held that job for one month.  Prior to that she worked at a Dandy Mini-Mart for three months as a cashier.  She had been babysitting for her sister, for $250.00 a month, until one month prior to the hearing.

---

1. The testimony is summarized herein in present tense as presented at the September 19, 2006 hearing.

Her depression is so bad that she can not leave her bedroom in the morning, and that keeps her from working. Her depression has been this bad since the year prior to the hearing. She stopped taking her depression medication in June because she is pregnant. She is in counseling.

When she dropped out of school at age fifteen in the eighth grade, she had mostly failing grades, and had been held back for two years.

She is living with her sister. She can not complete household chores. She can take care of her personal needs, but she can not interact with other persons and she spends her days sitting in her bedroom. She watches television. She eats meals in her bedroom.

When she was on medication she could sleep, but now she has difficulty sleeping and she cries. She does not support herself.

She stopped working at her two cashier jobs because of her depression and because of being around people. A cause of the onset of her depression in 2000 has not been found.

She has no hobbies, no friends, no church or social activities, and she does not go to movies. She does not go to stores in the daytime because she feels there are "too many people." She gets tired and has concentration difficulty during the day, but can not sleep. She cries four or six times a day. She zones out, not hearing other persons speak to her.

She has an obsession of pulling out her hair, and has had the obsession for five years. It is creating a bald spot on the top of her head. She can not control her own behavior. She experiences panic attacks.

The vocational witness stated, that assuming a person

> who retains the residual functional capacity to perform work that requires the following: lifting and carrying 50 pounds occasionally, 25 pounds frequently; standing and walking six hours in an eight hour day; sitting for six hours in an eight hour day.

4

> Further assume that this hypothetical individual is further restricted to work that, that involves occasional interactions with the general public, giving the claimant the benefit of the doubt with respect to her claims of panic attack, and the person retains the ability to follow simple instructions and is able to complete basis work tasks[.]

who is twenty years old, has an eighth grade education, lacks work experience and is unskilled, the person could perform substantial gainful activity in certain identified jobs. If the plaintiff is credible, the vocational witness stated, there is not substantial gainful activity that she can perform.

On December 6, 2006, the ALJ issued her decision denying the plaintiff benefits. (Tr. 8-18). The Appeals Council denied the plaintiff's request for review (Tr. 3-5), making the ALJ's decision the final decision of the Commissioner.

The plaintiff filed her complaint with this court on August 20, 2007. The defendant filed an answer to the complaint and a copy of the administrative record on December

5

11, 2007.  Pursuant to Local Rules 83.40.4 and 83.40.5 and this court's Order of December 14, 2007, the plaintiff filed her brief on March 24, 2008 and the defendant filed his brief on April 21, 2008. No reply brief has been filed.

If the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the

6

possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707. In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2)

7

whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he is unable to engage in his past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

In this case the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged onset date, that she has impairments that are severe (depression and trichotillomania), that her impairments alone or in combination do not meet or equal any listed impairments,

8

and that she has no past relevant work history.  The ALJ further determined that the plaintiff has the residual functional capacity[2] to lift and carry fifty pounds occasionally, and twenty-five frequently, and to stand, walk and/or sit for six hours in an eight hour work day.

On the basis of these findings, the ALJ found the plaintiff not to be disabled.

The plaintiff's argument that significance was not given to Dr. Lavin's opinion emphasizes the global assessment of functioning (GAF) scores assigned by Dr. Lavin.  Dr. Lavin's GAF scores are mentioned by the ALJ.  (Tr. 15).  They are considered, and rejected as "not supported by treatment records or current functional impairments that were listed as none to mild."  (Tr. 16).  The politeness of the plaintiff was taken into account and was set forth by the ALJ as a factor supporting vocational potential despite her low GAF scores.

---

2.  "Residual Functional Capacity" is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  *Burnett v. Commissioner of Social Security Adm.,* 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).

(*Id.*).  So was her orientedness, her motivation and her good attitude toward treatment. (*Id.*)  The ALJ concluded that she can follow simple instructions and can complete basis work tasks.  (*Id.*)

The plaintiff's brief advances, however, implications of a GAF score in a forty to fifty range.  The defendant's brief does not refute these implications, but asserts that the GAF scores are not supported by the treatment records or by the other evidence of record.

The defendant has presented an essentially factual argument in this court, in part critical of the GAF scale and of the putative implications of GAF scores, and in part addressed to presenting factual reasons other than the reasons given by the ALJ for the ALJ to have rejected Dr. Lavin's report.

The ALJ did not reject GAF scores as not probative, and so this court is not presented with a basis to consider whether they are.

The defendant is arguing that Dr. Lavin's assessment of the plaintiff's GAF scores as indicative of serious symptoms or serious occupational, school or social functioning is not consistent with self-evaluative statements made by the plaintiff to Dr. Lavin.  This invitation to the court to find inconsistencies in Dr. Lavin's findings disregards the adjudicative process and asks the court to find the facts instead of the ALJ.  The only reference by the ALJ to evidence to support his rejection of the plaintiff's low GAF scores is to reports that the plaintiff is polite and has a positive attitude and to the plaintiff's own denials of functional limitations in an interview.  It appears that the plaintiff's denial of functional limitations is consistent, not inconsistent, with her testimony and her overall claim.  A straightforward reading of her testimony is that she considers herself to be limited by her depression and by her aversion to being in the company of other people, not to be functionally impaired in other respects.

The ALJ referred to Dr. Lavin's GAF score as "opinion evidence."  It is opinion evidence; however, in the absence of

a medical expert's opinion that uses the GAF opinion as a component of an opinion more directly related to residual functional capacity, the ALJ's determination that the plaintiff had failed to carry the burden of showing that she is unable to work does not lack a basis in substantial evidence on the basis of the GAF score(s).

The ALJ did not fail to comply with the case law and regulatory directives that great weight generally is to be given to a medical opinion of a treating physician about the claimant's impairments.

The plaintiff's second argument is that the decision is based upon a vocational witness answer to a hypothetical question given that describes a person, that there is not substantial evidence to support a finding that the description is materially the same as the plaintiff, and that therefore the decision is not supported by substantial evidence.  The plaintiff contends that there are impairments established in the record that are not assimilated in to the operative hypothetical person's description, quoted above, at Tr. 168.

12

Specifically, the plaintiff contends that her major depression, dysthemia, trichotilomania and consistently low GAF scores are not assimilated in to the description. The plaintiff presents neither authority nor a persuasive argument to support this idea that the proper framing of the hypothetical question requires a direct statement of the claimant's impairment(s); i.e., that the ALJ must state to the vocational witness that the claimant "has dysthemia" and "has trichotilomania." We have observed elsewhere that we do consider it to be a part of the ALJ's explanatory burden under *Cotter v. Harris* to demonstrate that there is a rational relationship between the medical evidence, including characteristics and symptoms of impairments, and the articulation by the ALJ to the vocational witness of the effects of the impairment(s) as stated in residual functional capacity terms in the description of the operative hypothetical person. The ALJ must determine, based upon substantial evidence and reason(s), the functional effect(s) of an impairment, and it is the functional effect(s) of the impairment that is correctly stated to the vocational witness, not that the hypothetical person "has dysthemia" (for example).

13

The plaintiff contends that the hypothetical person described to the vocational witness at Tr. 169 is the hypothetical person who is more consistent with the evidence. More germanely, the argument is that there was not a basis in the evidence or in reasons to reject that the plaintiff spends all of her time in her room, eats her meals in her room, and has concentration problems and panic attacks.

The ALJ rejected the credibility of this description of a wholly reclusive person on the basis that elsewhere the plaintiff acknowledges that she rakes leaves, does housecleaning and does laundry. As the brief of the defendant points out, there was evidence to support the ALJ's finding that the plaintiff is not always in her room. The ALJ did have a basis in this evidence to reject the answer to the second hypothetical question, and not to base the decision on the answer to that question.

The third argument of the plaintiff is that the ALJ failed to properly address the testimony of the plaintiff about her daily activities.

14

It would be an error in our view to suppose that there is a certain level of daily activities that would undermine the idea that the plaintiff's reclusiveness and anxiety is or is not consistent with performing substantial gainful activity. She quit or lost some earlier jobs because she did not like being around people. She spends most of her time im her room. There is no evidence that it is medically necessary or beneficial for her to remain in her room. It is evident that a sense of necessity, whether for income or for some other purpose, has not for some time caused her to go out in to the world to make her way, but that reality does not of itself lend any support to her claim for disability benefits.

The plaintiff, as her brief describes her, is "an individual who lives a sad existence spending the extreme majority of her time in isolation." This reality does not undermine the validity of a determination by the ALJ that, insofar as the plaintiff is making the assertion that she has impairments that cause her to be unable to perform substantial gainful activity, something that so far in her life she has not

15

tried very often or for very long to do, she is not entirely credible.

There is not a basis for a finding that the decision of the ALJ is not supported by substantial evidence, and accordingly it is recommended that the appeal be decided in favor of the defendant and that the case be closed.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  May 15, 2008.